UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X
                                 :

ERIN STERN, previously           :
ERIN STUDER                      :

                                   :

                      Plaintiff,     :      Case No.  06 CV 958 (PKC)(RLE)
                                   :

               v.                   :

                                   :      **COMPLAINT**

eSPEED, INC.,                     :

                                   :      (Demand for Trial by Jury)

                    Defendant.    :

                                   :      ECF CASE
-----------------------------------------------X

Plaintiff Erin Stern, previously Erin Studer ("Studer"), by her attorney, alleges as follows for her Complaint against Defendant eSpeed, Inc. ("eSpeed"):

## NATURE OF ACTION

1.        This action is brought to remedy claims of a hostile work environment, gender discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et. seq. as amended ("Title VII"), the New York State Human Rights Law, Executive Law Secs. 290 et seq. (the "Human Rights Law"); and the Administrative Code of the City of New York Secs. 8-101 et seq. (the "Administrative Code").

2.        Studer seeks injunctive and declaratory relief, compensatory damages, punitive damages, liquidated damages, back pay, benefits, attorney fees and other appropriate relief pursuant to federal law.

1

## JURISDICTION AND VENUE

3.          Studer filed a timely charge of discrimination against eSpeed with the Equal

Employment Opportunity Commission ("EEOC") on or about July 7, 2005, complaining

of a hostile work environment, and gender discrimination, sexual harassment and

retaliation, as alleged herein.

4.          By notice dated January 31, 2006, the EEOC advised Studer of her right to

sue eSpeed in federal court.  This action has been commenced within 90 days of Studer's

receipt of the said notice.  Studer has fully complied with all prerequisites to jurisdiction

in this Court under applicable law.

5.          Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§1331 and

1337 and 42 U.S.C.A. §2000e-5(f).

6.          This court has supplemental jurisdiction over Studer's state law claims

pursuant to 28 U.S.C.A. §1367(a).

7.          eSpeed regularly does business within the Southern District of New York.

Venue is proper in this District pursuant to 28 U.S.C.A. §1391(b).

## PARTIES

8.          Studer is a Caucasian female and at all material times was an employee of

eSpeed, working out of its offices in Manhattan, New York.  Studer is over 18 years of

age and currently resides in Connecticut.

9.          On information and belief, eSpeed is a Delaware Corporation maintaining

2

its principal place of business at 110 East 59th Street, New York, New York 10022.  On

information and belief, eSpeed is, and all times material times, was, authorized to do

business in the State of New York.

## MATERIAL ALLEGATIONS

10.       eSpeed, as an employer, is hostile to female employees.  It condones, and/or

does not take meaningful steps to stop, hostile treatment and demeaning of women by its

male employees and supervisors.  Furthermore, despite the fact that some of its most

senior executives are Jewish, eSpeed tolerates the making of anti-Semitic comments by

its employees.

11.       Studer first commenced work with eSpeed as a sales person in

approximately August 2000 and continued in that position until she was laid off in or

about April 2001.  During said service, Studer performed well for eSpeed, and she was

not subjected to discriminatory treatment or a hostile work environment.

12.       Studer was rehired by eSpeed to a sales person position in September 2002.

Subsequently, Studer's performance met or exceeded expectations with the result that she

received increases in compensation and praise for the work that she did.

13.       Studer's compensation increased from $75,000 to $100,000 per annum

shortly after she completed training in 2003, and in December 2004, her compensation

was further increased to $115,000.  At the time of Studer's salary increase in December

2004, she was told by her manager that she was one of the very few people who was

3

receiving a raise.  At that time, Studer was also told that eSpeed wanted to increase its utilization of her business relationships, and she was given a very positive review.

14.        On July 22, 2004, the global head of sales for eSpeed and a superior of Studer, Stephen Bookbinder ("Bookbinder"), asked the person with whom Studer worked at her largest account if he was having an affair with Studer.  The question was, and was intended to be, demeaning of Studer.  When Studer learned of Bookbinder's statements, she suffered embarrassment and humiliation.

15.        Bookbinder, in a further effort to demean Studer, and knowing same to be untrue, told the aforesaid individual that Studer was not well regarded by eSpeed and also questioned Studer's veracity.

16.        Studer duly advised the individual in charge of the eSpeed's Human Resources Department, Joyce Shavers ("Shavers"), what had occurred and requested corrective action.  Shavers took no corrective action.  Instead, she told Studer to work out a resolution directly with Bookbinder.

17.        When Studer then spoke with Bookbinder, he admitted asking the inappropriate question about Studer.  Studer told Bookbinder that what he had done was inappropriate, false and personally detrimental, but Bookbinder demonstrated no remorse regarding it.

18.        At the same time, Studer told Bookbinder that her direct superior, Chris Pepe, told her that Bookbinder intended to assign Studer's best clients to other

4

employees.  Studer asked Bookbinder not to do so.

19.        Studer, who is not Jewish, also complained to Bookbinder that Pepe had made derogatory comments to her regarding the fact that she was dating a Jewish man and that her sister's husband was Jewish.  Studer is unaware of any corrective action that was taken with respect to these derogatory comments.

20.        Kevin Foley, President of eSpeed, subsequently met with Studer and apologized for what had occurred.  Foley told Studer that he would reprimand Bookbinder, but Studer was never advised that a reprimand was given.

21.        Previous to August 2, 2004, Pepe inappropriately, and with the intent of embarrassing Studer, asked another employee of eSpeed if Studer was having an affair with the same person with whom Bookbinder had previously spoken.  Pepe was advised by that employee that Studer was having no such affair.

22.        On August 11, 2004, Studer advised Shavers that eSpeed had a major problem with respect to the treatment of Studer, in particular, and women, in general, and that it needed to be corrected.

23.        On August 12, 2004, Foley again apologized to Studer for what had occurred.  Studer told Foley about the objectionable Jewish comments made by Pepe as well as inappropriate sexual comments made by him.  Foley said that he would speak with Pepe, and he promised to protect Studer's identity.

24.        Thereafter, on August 19, 2004. Pepe spoke to Studer in front of two other

5

employees and described how Foley had spoken with him regarding his comments about which Studer had complained.  Studer was uncomfortable discussing the situation with Pepe, and she said that she did not want to discuss it.  That evening at a customer dinner Pepe again raised the same subject with Studer who again voiced the same objection.

25.        Shavers finally advised Studer that the problem would be addressed by eSpeed by changing Studer's reporting structure so that she would no longer report to Bookbinder or work with Pepe.  However, Studer's desk remained at the same physical location in the office.  As a result, she was consistently seated near both Bookbinder and Pepe, and as a practical matter, she still had to report to both of them.

26.        As a result of eSpeed's actions or failure to act, Studer realized that eSpeed would not protect her; she would continue to be the subject of discriminatory and hostile treatment.

27.        The problems Studer endured continued without abatement for the remaining duration of her employment.

28.        During the last six months of Studer's employment, Pepe also regularly made verbal comments of a sexual nature to her, both individually and in front of others. Among other things, he would comment on parts of her body, and how they looked, and he asked her about the types of sexual activities in which she engaged.  Such comments were openly made by Pepe, and they were well known to be ongoing within eSpeed's office.

6

29.        At a client function on or about February 3, 2005 Pepe referred to Studer as "just another pretty face" and indicated that he was not sure what job she performed at eSpeed.  He made those comments, inter alia, in front of clients from Studer's largest account.  eSpeed was aware of these comments being made by Pepe.

30.        Studer complained about Pepe's inappropriate comments to Shavers, but Studer was never advised that any corrective action was taken.

31.        On numerous occasions Studer noticed that other employees who complained about disparate treatment were terminated or transferred so that she reasonably believed that retaliation was the accepted practice at eSpeed.  Studer was made to feel that she could not trust either Bookbinder or Pepe, by virtue of how they treated her.  Studer was also made to feel that Shavers was unwilling to remediate, and preferred to ignore, the discriminatory and retaliatory problems that existed at eSpeed.

32.        On March 14, 2005, Pepe told Studer that he wondered who would take over her accounts when she got married.  On the same day, Studer was also advised that Bookbinder had said that a recently terminated female employee should spend more time with her husband and children.

33.        Notwithstanding Studer's excellent performance, she was terminated without cause or justification, on March 15, 2005.  At the time of termination, Studer was told that eSpeed was not doing as well as had been hoped and that she was one of several others who were being let go.

34.         At the time Studer was terminated, she was offered another job in a different division of eSpeed's parent company.  That job was not in sales, had no growth potential and was in a different career path.  Studer did not accept it.  eSpeed denied Studer's repeated requests to be reinstated and has not recalled her to subsequent job openings in her area.

35.         A sexually hostile environment existed at eSpeed which was known to management, Studer was repeatedly subjected to this environment, and the condition was allowed to continue until Studer's termination.

36.         At the time of Studer's termination, she was the last of seven women who had been employed in the eSpeed sales group.  Upon, and/or after, Studer's termination all of her accounts were given to: (i) male employees; who (ii) are believed to have been hired by eSpeed after Studer; and who (iii) did not have prior relationships with those clients at eSpeed.  On information and belief, one or more of the new male sales employees was paid more than Studer had been paid for doing substantially similar work.

37.         Because Studer is a woman, she was subjected to hostile and embarrassing treatment, and eSpeed failed and refused to take meaningful corrective action.  The decision to terminate Studer, and to transfer her accounts, was predicated on her gender and was retaliatory because of the complaints she made regarding the manner in which she was treated.

38.         The injuries to Studer have been continuous, extended over a long period of

time and have been severely injurious to her.  By virtue of eSpeed's actions and inactions, as aforesaid, Studer sustained damages in that she was embarrassed, humiliated, personally violated, suffered feelings of diminished self esteem, had her career path interrupted and has been hurt economically.

## AS A FIRST CAUSE OF ACTION - TITLE VII CLAIM

39.        Studer re-alleges paragraph 1 through 38, inclusive, of this Complaint.

40.        eSpeed discriminated against Studer in the terms and conditions of her employment on the basis of her gender, and allowed her to be sexually harassed and to be subjected to a sexually hostile environment, and retaliated against her, in violation of Title VII.

41.        In taking the above-described discriminatory actions, eSpeed acted with malice and reckless indifference to Studer's rights under the Title VII.

42.        As a result of eSpeed's discriminatory acts, Studer has suffered and continues to suffer economic loss, mental anguish, emotional distress and other compensable injuries for which compensatory and punitive damages should be awarded against eSpeed and in favor of Studer.

## SECOND CAUSE OF ACTION - NEW YORK'S HUMAN RIGHTS LAW

43.        Studer repeats paragraphs 1 through 38, inclusive, of this Complaint.

44.        eSpeed discriminated against Studer in the terms and conditions of her employment on the basis of her gender, allowed her to be sexually harassed and to be

subjected to a sexually hostile environment, terminated her, and retaliated against her, in violation of New York's Human Rights Law, Executive Law Article 15, §296.

45.     In taking the above-described discriminatory actions, eSpeed acted with malice and reckless indifference to Studer's rights under New York's Human Rights Law.

46.     As a result of eSpeed's discriminatory acts, Studer has suffered and continues to suffer economic loss, mental anguish, emotional distress and other compensable injuries for which damages should be awarded against eSpeed and in favor of Studer.

## THIRD CAUSE OF ACTION - NEW YORK CITY'S ADMINISTRATIVE CODE

47.     Studer repeats paragraphs 1 through 38, inclusive, of this Complaint.

48.     eSpeed discriminated against Studer in the terms and conditions of her employment on the basis of her gender and/or race, and allowed her to be sexually harassed and to be subjected to a sexually hostile environment, denied promotions, and retaliated against her, in violation of New York City's Administrative Code.

49.     In taking the above-described discriminatory actions, eSpeed acted with malice and reckless indifference to Studer's rights under New York City's Administrative Code.

50.     As a result of the Studer's discriminatory acts, Studer has suffered and continues to suffer economic loss, mental anguish, emotional distress and other compensable injuries for which compensatory and punitive damages should be awarded

10

against eSpeed and in favor of Studer.

   **WHEREFORE**, Studer respectfully requests that this Court enter a Judgment in her favor and against eSpeed:

   a)  declaring the acts and practices by eSpeed complained of herein to be violations of Title VII, the New York's Human Rights Law and New York City's Administrative Code;

   b)  enjoining and permanently restraining these violations of the acts and practices by eSpeed complained of herein to be violations of Title VII, New York's Human Rights Law and New York City's Administrative Code;

   c)  directing eSpeed to take such affirmative steps as are necessary to ensure that these unlawful practices are discontinued and eliminated, and do not continue to affect Studer's employment opportunities;

   d)  directing eSpeed to develop and implement, under the supervision of this Court, an effective policy to prevent sexual discrimination, sexual harassment and unlawful retaliation;

   e)  directing eSpeed to pay Studer compensatory and punitive damages;

   f)  directing eSpeed to pay Studer an amount equal to her lost wages and benefits retroactive to the date of her termination, with interest thereon, and front pay until she obtains an equivalent job;

   h)  awarding Studer the costs of this action, interest, and attorney's fees;

and

        i)      granting Studer such other and further relief as this Court deems

necessary and proper.

## DEMAND FOR TRIAL BY JURY

        Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Studer

demands a trial by jury of all issues so triable in this action.

Dated: New York, New York
       February 6, 2006

                   __/s/_____
                   ARNOLD H. PEDOWITZ (AP-1382)
                   Pedowitz & Meister, LLP
                   Attorneys for Plaintiff
                   1501 Broadway, Suite 800
                   New York, NY 10036
                   (212) 403-7321