UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ERIN STERN, previously ERIN
STUDER,

                             Plaintiff,

                                                                   06 Civ. 958 (PKC)

          -against-

                                                                   MEMORANDUM
                                                                     <u>AND ORDER</u>

ESPEED, INC.,

                             Defendant.

-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Erin Stern brings this action against her former employer, eSpeed, Inc. ("eSpeed"). Plaintiff asserts claims of sexual harassment under state and federal law based upon allegations of conduct by various employees of defendant. Defendant moves to dismiss the action under Rule 12(b), Fed. R. Civ. P., or, in the alternative, stay the action pending arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. (Docket No. 11) Plaintiff opposes defendant's motion on the ground that the arbitration agreement at issue is unenforceable. (Pl. Mem. at 2)

        "Under Section 3 of the FAA, 9 U.S.C. § 3, a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." <u>WorldCrisa Corp. v. Armstrong</u>, 129 F.3d 71, 74 (2d Cir. 1997) (internal quotation omitted). The Supreme Court has instructed that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to

which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3-4). In the Second Circuit, a district court must resolve four inquiries to determine whether part or all of an action should be sent to arbitration:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).

Plaintiff opposes defendant's motion upon the ground that the first inquiry identified in JLM Industries is not satisfied. Thus, the question presented here is whether there is an enforceable agreement to arbitrate. Plaintiff offers several theories as to why the arbitration agreement is not enforceable. First, plaintiff asserts that she has no present recollection of signing the agreement. (Stern Decl. ¶ 3) Second, plaintiff argues that, assuming arguendo that she signed the agreement, it is invalid because defendant provided no consideration. (Pl. Mem. at 2-5) Third, plaintiff argues that the agreement is invalid because it is unconscionable. (Id. at 5-13) Finally, plaintiff argues that the agreement violates the rules of the American Arbitration Association ("AAA") and is therefore invalid. (Id. at 13-14) I consider each of these theories below.

I.  Plaintiff's Signature on the Arbitration Agreement

In New York, a party who executes a contract is considered bound by the terms of that contract, unless there is a showing of fraud, duress or similar wrongful act of the other contracting party. See Maines Paper and Food Serv., Inc. v. Adel, 256

2

A.D.2d 760, 761 (3d Dep't 1998) (applying this rule to a party who suffered from an "inability to understand the English language"); Freda v. McNamara, 254 A.D.2d 251, 252-53 (2d Dep't 1998) (applying this rule to a party who received no explanation about the content of the contract).  The fact that the party might not have read the contract before signing is not a defense to enforcement.  Maines Paper, 256 A.D.2d at 761.  Courts have applied this rule to arbitration agreements.  See, e.g., Hart v. Canadian Imperial Bank of Commerce, 43 F.Supp.2d 395, 400-01 (S.D.N.Y. 1999) ([U]nder general contract principles, absent a showing of fraud or other unlawful behavior, plaintiff's subjective knowledge of the scope of the arbitration clause is irrelevant and he is presumed to have agreed to all the terms of the contract . . . ." (internal quotations omitted)).

   Defendant has come forward with two affidavits of Lourdes Trofeo, an employee in its human resources department, both of which assert that plaintiff entered into the Arbitration Agreement.  See Trofeo Decl. ¶ 4, Ex. A; Trofeo Repl. Decl. ¶¶ 5, 8, Exs. C-D.  In response to defendant's evidence, plaintiff does not affirmatively assert that she did not sign the arbitration agreement.  Rather, in her signed declaration, plaintiff states:

> I have no present recollection of having signed the Arbitration Agreement. The signature at the end of the Arbitration Agreement is a bad copy. While it looks the way I sign my name I am unable to state that it is my signature.

(Stern Decl. ¶ 3)  The arbitration agreement has a date of November 20, 2003 next to the signature (Trofeo Decl. Ex. A), and plaintiff alleges that she continued working for defendant until March 15, 2005 – approximately, 17 months later. (Compl. ¶ 33)  In opposing defendant's motion, plaintiff does not assert that she refused to sign such an agreement or has never seen such an agreement.  Indeed, plaintiff concedes that the signature

3

on the form "looks the way I sign my name." (Stern Decl. ¶ 3) Plaintiff has failed to come forward with a sworn denial that she had seen the document or signed the document. In the absence of any other facts casting doubt on whether she signed the agreement, her lack of recollection of signing the agreement is insufficient to defeat defendant's motion.

    II.       Consideration for the Arbitration Agreement

In opposing defendant's motion, plaintiff argues that she did not receive any consideration for signing the arbitration agreement because it was not accompanied by any "raise, special payment, or promotion." (Pl. Mem. at 3) In response, defendant argues that the continuation of plaintiff's employment provides sufficient consideration to enforce the agreement. (Def. Repl. Mem. at 3-5)

It is settled law that "the presence of consideration . . . is a fundamental requisite" to any valid contract. Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 464 (1982). Consideration "consists of either a benefit to the promisor or a detriment to the promisee," and "the value or measurability of the thing forborne or promised is not crucial so long as it is acceptable to the promisee." Id. In the specific context of post-employment arbitration agreements, several courts in this District have held that the continuation of employment alone is sufficient consideration to enforce such an agreement. See, e.g., Tuskey v. Volt Info. Scis., Inc., 2001 WL 873204, *3 (S.D.N.Y. Aug. 3, 2001); Ahing v. Lehman Bros., 2000 WL 460443, *7 (S.D.N.Y. Apr. 18, 2000); Arakawa v. Japan Network Group, 56 F.Supp.2d 349, 352 (S.D.N.Y. 1999). In this case, the continuation of plaintiff's employment was sufficient consideration to support the agreement.

4

III.    Unconscionability

Plaintiff argues that the arbitration agreement is unconscionable because it "purports to give everything to Defendant while stripping Plaintiff of her substantive rights." (Pl. Mem. at 5)  Moreover, plaintiff argues that she had no "meaningful choice . . . because it was presented in such a manner as to be forgettable, she had no opportunity to negotiate it, she was not given a copy of it, and it is written and printed in a confusing[,] hard-to-understand format." (Id. at 7)

In New York, a court considers both substantive and procedural elements to determine whether a contract was unconscionable when made – i.e., that there was "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 10 (1988) (internal quotations omitted).  See also Desiderio v. National Assoc. of Sec. Dealers, 191 F.3d 198, 207 (2d Cir. 1999), cert. denied, 531 U.S. 1069 (2001) (applying this rule to arbitration agreements in employment).  Procedurally, a court may consider "such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." Gillman, 73 N.Y.2d at 11.  Substantive unconscionability "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." Id. at 12.

The arbitration agreement at issue is not procedurally unconscionable. "Mere inequality in bargaining power between employers and employees . . . is not a suf-

5

ficient reason to hold that arbitration agreements are never enforceable in the employment context." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991). Plaintiff has not argued that she lacked experience or education and thus could not understand the terms of the arbitration agreement. I have reviewed the agreement, and I conclude that plaintiff's assertion that it is "written and printed in a confusing[,] hard-to-understand format" (Pl. Mem. at 7) is without merit. The agreement is written in clear language and relies on capital lettering and/or bold print in key sections. See Trofeo Decl. Ex. A.

Plaintiff appears to argue that the defendant failed to adequately inform and warn her about the implications of her signing the arbitration agreement. However, as discussed above, a plaintiff who signs a contract that she did not read or understand is still bound by the contract's terms. Maines Paper, 256 A.D.2d at 761; Freda, 254 A.D.2d at 252-53. The fact that plaintiff's signature on the agreement may have been obtained in an allegedly "routine manner" (Id. at 5) or "in such a manner as to be forgettable" (Id. at 7) is insufficient to demonstrate procedural unconscionability.

Nor is the agreement substantively unconscionable. Plaintiff argues that the arbitration agreement prohibits the award of punitive damages, attorney's fees, legal costs or injunctive relief. (Pl. Mem. at 9-11) However, the relevant language of agreement provides:

> Unless otherwise required by law, each party must pay its own legal costs and fees in the arbitration (and any related proceeding), and the arbitrator(s) (and court in any proceeding related to the arbitration) may not award special, exemplary, or punitive damages of any kind regardless of the nature or form of the dispute or claim (and you waive any right you might otherwise have), may not award attorney's fees or legal costs, and shall render the award in accordance with this Arbitration Agreement and Policy. The arbitrator(s) may not award injunctive relief, unless so required by law.

6

(Trofeo Decl. Ex. A at 3-4)  In drafting this language, the parties recognized the possibility that this arbitration agreement could be rendered unenforceable if it made unavailable certain remedies provided by law, such as punitive damages.  As a result, the parties included the critical language "[u]nless otherwise required by law" in order to ensure the enforceability of the agreement.  In the memorandum accompanying their motion, defendants argue that this language "gives arbitrators the ability to award punitive damages in cases where the law requires that such damages be available."  (Def. Repl. Mem. at 8)

Here, the law requires that the remedies of punitive damages, attorney's fees and legal costs be available in arbitration.  <u>Desiderio</u>, 191 F.3d at 205 (holding that "[c]ompulsory arbitration does not defeat the right to compensatory and punitive damages[] or fee shifting" for Title VII plaintiffs).  Title VII also allows for injunctive relief.  42 U.S.C. § 2000e-5(g) (providing for such non-monetary relief as "reinstatement" and "hiring".  <u>See</u> <u>also</u> <u>Reiter v. MTA N.Y. City Transit Auth.</u>, 457 F.3d 224, 229-30 (2d Cir. 2006) (noting that "equitable relief lies at the core of Title VII . . . [and] is not incidental to monetary relief" under the statute).  The availability of this remedy is thus "required by law," and plaintiff may seek injunctive relief in the arbitration.

IV.    Due Process Protocols of the American Arbitration Association

It is unclear whether plaintiff asserts a third ground – that the arbitration agreement violates the Due Process Protocols of the American Arbitration Association – for denying defendant's motion.  In her memorandum, plaintiff states:

> Plaintiff does not know whether the Arbitration Agreement in this case meets the Due Process Protocols of the American Arbitration Association. If it does not, then the American Arbitration Association may refuse to process an arbitration under its auspices.

7

(Pl. Mem. at 13)  Plaintiff cites no authority in support of these assertions.  However, assuming arguendo that the AAA may refuse to arbitrate a given dispute, there is no support in the law that such a possibility provides an adequate basis for a federal court to deny a motion to compel arbitration.  Therefore, I do not address any issues of the parties' compliance, or lack of compliance, with the Due Process Protocols or any other rules of the AAA.

    V.    Remaining <u>JLM Industries</u> Factors

The three remaining factors identified by the Second Circuit in <u>JLM Indus.</u>, 387 F.3d at 169, do not preclude the relief sought by defendant.  With respect to the second factor, plaintiff does not claim that the dispute is beyond the scope of the agreement.  As to the third factor, the Second Circuit has held that Title VII claims – including claims for punitive damages – are potentially arbitrable.  <u>Desiderio</u>, 191 F.3d at 205 (holding that a Title VII plaintiff could seek compensatory damages, punitive damages and "fee shifting" in arbitration).  After <u>Desiderio</u>, courts in this District have rejected arguments that Congress intended Title VII claims, or at least those seeking punitive damages, to be exempt from mandatory arbitration.  <u>See,e.g.</u>, <u>Martin v. SCI Mgmt. L.P.</u>, 296 F. Supp. 2d 462, 469 (S.D.N.Y. 2003).  I do not reach the fourth inquiry because plaintiff asserts no other federal claims.

VI.     Conclusion

For the reasons outlined above, defendant's motion to compel arbitration is GRANTED and the action is DISMISSED. The Clerk should enter judgment accordingly.

SO ORDERED.

*P. Kevin Castel*
United States District Judge

Dated: New York, New York
       September 22, 2006